**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-CIV-60898-RAR**

**NETSURION, LLC**,

    Plaintiff,

v.

**ASURION, LLC**,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendant Asurion, LLC's Dispositive Motion to Dismiss or Transfer for Lack of Personal Jurisdiction [ECF No. 16], filed on May 17, 2019. At issue here is whether Plaintiff's claims for declaratory judgment of trademark non-infringement arise from Defendant's conduct pursuant to Florida Statutes section 48.193(1)(a)(1), such that specific personal jurisdiction may be exercised over an out-of-state Defendant. Having considered the parties submissions, oral argument on June 12, 2019, the record, and applicable case law, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [ECF No. 16] is **GRANTED** as set forth herein.

## BACKGROUND

Plaintiff offers complex network and cyber-security services for businesses seeking to improve their network security platforms. Compl. ¶¶ 10-15. Defendant provides technical support services for mobile devices, home appliances, and consumer electronics under the mark Asurion. *Id.* at ¶ 16. While Plaintiff's services are sold to businesses through managed service providers and point-of-sales distributors, Defendant directly services consumers. *Id.* at ¶¶ 14, 16. Both

Plaintiff and Defendant have trademark registration for their respective marks. *Id*. at ¶¶ 15, 18. On August 30, 2017, Plaintiff petitioned the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office to amend the identification of services listed on its trademark application ("TTAB Proceeding"). *Id.* at ¶ 15 n.1. In the TTAB proceeding, Defendant opposed Plaintiff's application and the parties engaged in discovery. *Id.* at ¶ 19; Pl.'s Opp. ¶ 8.

On March 29, 2019, counsel for Defendant called Plaintiff's counsel and stated that unless Plaintiff transitioned to a different name and mark, Defendant would initiate litigation against Plaintiff. Compl. ¶ 16. On April 4, 2019, Plaintiff Netsurion, LLC filed a four-count Complaint for declaratory judgment [ECF No. 1] against Defendant Asurion, LLC seeking a declaration that its usage and registration of the Netsurion mark: (1) does not constitute trademark infringement (Count I); (2) is not likely to dilute Defendant's Asurion mark (Count II); (3) does not conflict with Defendant's rights pursuant to 15 U.S.C. section 1052(d) (Count III); and (4) has not harmed or damaged Defendant (Count IV). *See generally* Compl.

On May 17, 2019, Defendant filed a Motion to Dismiss or Transfer for Lack of Personal Jurisdiction [ECF No. 16] ("Motion"). Travelling under the mistaken premise that Plaintiff's Complaint alleges general personal jurisdiction, Defendant's Motion focuses on Plaintiff's inability to meet the jurisdictional paradigm set forth by the United States Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). *See generally* Def.'s Mot. Dismiss. In support of its Motion, Defendant submitted the Declaration of Bettie Colombo, the Senior Director of Corporate Communications for Asurion [ECF No. 16-1]. In her declaration, Ms. Colombo notes that Asurion is not incorporated in Florida, has a principal place of business in Nashville, Tennessee, employs approximately 4% of its over 19,000 employees in Florida, and has two call centers in Florida. *Id.*

On May 31, 2019, Plaintiff filed its Response in Opposition to Defendant's Motion [ECF No. 19] ("Opposition") alleging that Defendant is subject to specific personal jurisdiction in Florida. Plaintiff's Opposition includes two declarations—one by Kevin Watson, the Chief Executive Officer of Netsurion, LLC [ECF No.19-1] and another by Anna B. Naydonov, Esq. [ECF No.19-2]—and fifteen exhibits. In relevant part, the evidence submitted by Plaintiff demonstrates the following uncontroverted facts: Asurion employs 4% of its employees in Florida [ECF No. 16-1]; has two call centers, including a 72,000 square foot office space in Orlando [ECF No. 19-3]; operates cell phone repair centers and forward stocking locations in several cities across the State [ECF Nos. 19-4; 19-5]; promotes its services and Floridian clients on its website [ECF No. 19-7]; and has eleven subsidiaries registered with the Florida Department of State [ECF No. 19-10]. In addition, Plaintiff provided evidence of cease and desist letters sent by Defendant to two Florida-based entities [ECF No. 19-15].

In its Reply in Support of Motion [ECF No. 20] ("Reply"), Defendant advances that it has not engaged in the type of trademark enforcement activity necessary to confer the Court with specific personal jurisdiction in a trademark non-infringement action. In support of its argument, Defendant submitted the Declaration of Emily Warth, the Assistant General Counsel for Asurion, LLC [ECF No. 20-1]. In her declaration, Ms. Warth notes that Asurion has not engaged in judicial trademark enforcement activity against Netsurion in the State of Florida, nor filed any trademark infringement lawsuit against any other party in the State. Wrath Decl. ¶¶ 3, 5. Defendant also submitted evidence regarding a previous, unrelated lawsuit against Asurion [ECF No. 20-2] and Plaintiff's discovery requests in the TTAB Proceeding [ECF No. 20-3]. On June 11, 2019, Defendant submitted a Notice of Supplement Authority, which contained the recently decided

Eleventh Circuit case, *Hinkle v. Cirrus Design Corp.*, No. 18-10404, 2019 WL 2233644, at *1 (11th Cir. May 23, 2019) [ECF No. 21].

The parties do not disagree about the aforementioned facts. Rather, the heart of the jurisdictional dispute centers on the applicable legal framework used to assess specific personal jurisdiction in a trademark non-infringement suit. Plaintiff argues that *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, No. 13-CIV-21297-KMM, 2014 WL 11880964, at *1 (S.D. Fla. Jan. 24, 2014), requires the Court to find specific personal jurisdiction in light of Defendant's prevalent commercial use of the Asurion mark in Florida.[1] Defendant disagrees and advances that pursuant to *United Bully Kennel Club, Inc. v. Am. Bully Kennel Club, Inc.*, No. 11-CIV-80682, 2011 WL 13228570, at *1 (S.D. Fla. Oct. 5, 2011), Plaintiff must demonstrate that its claims specifically arise out of Defendant's trademark enforcement activities. As explained below, the Court rejects both parties' invitations and resolves this legal issue in favor of Defendant.

## **LEGAL STANDARD**

To withstand a motion to dismiss pursuant to Rule 12(b)(2), a plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over the non-resident defendant. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). In considering the adequacy of a plaintiff's proffer, a district court is constrained to accept uncontroverted allegations in the Complaint as true and to resolve factual disputes in the plaintiff's favor. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Where a defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden shifts back to the plaintiff to produce jurisdictional evidence. *Diamond*, 593 F.3d at 1257. Any factual conflict

---

[1] In the alternative, Plaintiff requests jurisdictional discovery, an issue addressed separately herein.

in the parties' evidence must be construed in the light most favorable to the plaintiff. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

A court may assert either general or specific jurisdiction over a defendant. In Florida, general personal jurisdiction arises when a defendant engages in "substantial and not isolated activity" in the State. Fla. Stat. § 48.193(2). There is no allegation here that Defendant Asurion has sufficient contacts with the State of Florida to properly invoke general jurisdiction.[2] Therefore, Defendant's Motion to Dismiss stands or falls on a specific jurisdiction analysis.

Where a defendant challenges specific personal jurisdiction, the plaintiff has the twin burden of establishing that personal jurisdiction over the defendant comports with the forum state's long-arm statue, as well as the requirements of the Due Process Clause. *See PVC Windoors*, 598 F.3d at 807. Both prongs of the jurisdictional analysis must be satisfied for a federal court to exercise specific personal jurisdiction over a nonresident defendant. *See Madara*, 916 F.2d at 1514.

## **ANALYSIS**

### A. *Florida's Long-Arm Statue*

Plaintiff argues that the Court has specific personal jurisdiction over Defendant pursuant to section 48.193(1)(a)(1) of Florida's long-arm statute, which extends jurisdiction over nonresidents for "any cause of action **arising from** . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." (emphasis added). While the term "arising from" is broad and does not mean "proximately caused by," it does require "a direct affiliation, nexus, or substantial connection to exist between the basis

---

[2] At the hearing on June 12, 2019, Plaintiff's counsel confirmed that Plaintiff's Opposition was premised on a theory of specific personal jurisdiction. Moreover, Plaintiff's Opposition does not advance argument on the existence of general personal jurisdiction, but rather requests jurisdictional discovery to determine whether general personal jurisdiction exists. Pl.'s Opp. 13.

for the cause of action and the business activity." *Hinkle*, 2019 WL 2233644, at *4 (internal citations and quotations omitted); *see also Insight Instruments, Inc. v. A.V.I.-Advanced Visual Instruments, Inc.*, 44 F. Supp. 2d 1269, 1272 (M.D. Fla. 1999). It is not enough that there exist some similarities between the activities that connect Defendant to the forum and Plaintiff's claims. Rather, Plaintiff's claims must have a "substantial connection" to Defendant's business ventures in the State. *Hinkle*, 2019 WL 2233644, at *4. Indeed, it is this basic requirement that differentiates the long-arm authority conferred by section 48.193(1)(a)(1) from the general exercise of personal jurisdiction authorized by section 48.193(2).

Plaintiff argues that Defendant's activities in Florida—including offering its services, owning two call centers, having multiple subsidiaries, and employing 4% of its workforce in the State—are sufficient to demonstrate that Plaintiff's claims "arise from" Defendant's in-state conduct. *See* Pl.'s Opp. 7. Relying on *Buccellati*, Plaintiff advances that Defendant's contacts with the State are "directly related" to Plaintiff's declaratory judgment action and thus satisfy the first prong of the jurisdictional inquiry. *Id.*

Plaintiff's argument fails to persuade. In *Buccellati*, the counter-plaintiffs argued that their declaratory judgment claims arose from the counter-defendant's business activities in Florida, including the counter-defendant's "wrongful use of [the] trademarks" at issue. *Buccellati*, 2014 WL 11880964 at *7 (internal citations and quotations omitted). In weighing this representation, the Court concluded that the counter-plaintiffs' declaratory judgment claims, which included allegations of superior rights in the challenged mark, were directly related to the counter-defendant's sales under the disputed trademark. No such claims, however, exist here. Unlike the counter-plaintiff's claims in *Buccellati*, in this case, Plaintiff has not alleged superior rights to a challenged mark, nor argued wrongful usage. Instead, Plaintiff seeks a declaration that its use of

the Netsurion mark has not harmed Defendant, nor infringed, diluted, or conflicted with its trademark. Thus, rather than affirmatively seek relief from Defendant's purported rights in a challenged mark, Plaintiff's claims are defensive in nature and do not necessarily arise from Defendant's general business presence in this State. Accordingly, analysis under the *Buccellati* framework is unavailing in this context.

Defendant's invocation of *United Bully* fares no better in applying the statutory paradigm. Defendant argues that pursuant to *United Bully,* the Court does not have specific jurisdiction under section 48.193(1)(a)(1) unless Plaintiff's actions arise out of Defendant's trademark enforcement activities in the State. *See* Pl.'s Reply 2. Defendant, however, conflates the statutory inquiry in *United Bully* with the Court's constitutional analysis. Specifically, *United Bully* held that in the context of a trademark non-infringement action, the due process requirements—not the statutory framework—require a court to focus on a defendant's enforcement activities within the forum state. *United Bully*, 2011 WL 13228570 at *12. Indeed, with respect to the statutory prong of the jurisdictional inquiry, the Court in *United Bully* did not assess the defendant's enforcement activities, but rather determined that the Court lacked specific personal jurisdiction because the defendant did not engage in a general course of business activity in Florida for its pecuniary benefit. *See United Bully*, 2011 WL 13228570 at *6. The issue of whether Defendant engaged in business activity for its pecuniary benefit is not one raised here, and the Court's analysis regarding due process requirements, while similar, is distinct from its statutory analysis. *See Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859 (11th Cir. 2013) (noting that the analyses under the Due Process Clause and the Florida long-arm statute are distinct inquiries). As such, *United Bully* is of little import in assessing Florida's long-arm statute.

Accordingly, the better course of conduct is to apply the language of the statute itself, which requires that Plaintiff's cause of action "aris[e] from" Defendant's business ventures. Fla. Stat. § 48.193(1)(a)(1). In *Hinkle*, the Eleventh Circuit clarified that there must be a "direct affiliation, nexus, or substantial connection" between a plaintiff's cause of action and the defendant's business activity. *Hinkle*, 2019 WL 2233644 at *4 (internal citations and quotations omitted). In so doing, the Eleventh Circuit held that although defendants sold, promoted and serviced aircrafts in Florida, plaintiffs had not demonstrated that their causes of action for negligence or breach of contract arose out of defendants' activities in Florida. *Id.* at *3. The Court noted that defendants' contacts with the state were unrelated to plaintiffs' causes of action and as such the requisite nexus could not be established. *Id.*

The same is true here. None of the activities Plaintiff highlights—Defendant's subsidiaries, call centers, employees, or the availability of its products and services in Florida—demonstrate that Plaintiff's non-infringement claims arise from Defendant's in-state activities.[3] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (noting that for specific jurisdiction "a defendant's general connections with the forum are not enough."). Nor is there any reason to think that consideration of these activities in the aggregate, as the Court must, alters the analysis in any meaningful way. There is simply little

---

[3] Plaintiff's argument with respect to the statutory requirements under section 48.193(1)(a)(1) is narrowly tailored to Defendant's business presence in the State of Florida and does not include Defendant's alleged enforcement activities in Florida (on which Plaintiff relies for its due process argument). *See* [ECF No. 19 at 6-7]. Nonetheless, the Court notes that including Defendant's cease and desist letters in the the statutory inquiry would not suffice to demonstrate that Plaintiff's claims "arise out of" two cease and desist letters sent to unrelated parties in 2006 and 2017. Moreover, the mailing of cease and desist letters, without more, does not suffice to show Defendant engaged in a business venture in Florida. *See RC3, Inc. v. Bieber*, No. 12-CIV-193-J-37, 2012 WL 4207457, at *5 (M.D. Fla. Sept. 18, 2012) (rejecting plaintiff's argument that its declaratory judgment claims arose out of a cease and desist letter). Similarly, Defendant's phone call threatening to sue Plaintiff, without more, does not constitute "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state," as required under the statute. Fla. Stat. § 48.193(1)(a)(1).

in Plaintiff's evidence to suggest that Plaintiff's declaratory judgement action is substantially connected to Defendant's business presence in this State. Defendant's acts of owning call centers, employing personnel, having subsidiaries, and providing services in Florida do not, in the jurisdictional sense, relate in any material way to the trademark right that is at the center of Plaintiff's declaratory judgment claims.

A finding of specific personal jurisdiction where Defendant's conduct has no demonstrable nexus to Plaintiff's claim, as here, would result in a holding that functionally nullifies the distinction between specific and general jurisdiction in the District. In addition, doing so would "effectively raise from the dead the 'sliding scale' approach to specific jurisdiction rejected by the Supreme Court in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017)." *Hinkle*, 2019 WL 223364 at *4. No matter how involved Defendant may be in the State of Florida, because Plaintiff has not articulated a "direct affiliation, nexus, or substantial connection" between that involvement and its causes of action, specific jurisdiction pursuant to section 48.193(1)(a)(1) is not proper.

Where the requirements of Florida's long-arm statute are not met, the Court need not address whether application of the statute would comply with the constitutional due process requirements. *Hinkle*, 2019 WL 223364 at *4.

### B. *Jurisdictional Discovery*

In its Opposition, Plaintiff requests an opportunity to conduct jurisdictional discovery to determine whether general personal jurisdiction exists. Pl.'s Opp. 14. As a perfunctory matter, the incidental manner in which Plaintiff's discovery request is made is procedurally improper. *See Hinkle*, 2019 WL 2233644 at *4 (affirming the district court's denial of plaintiff's jurisdictional discovery request where plaintiff requested discovery as an alternative to the granting of

defendants' motion to dismiss).  Nonetheless, even on the merits, Plaintiff has failed to identify a genuine factual dispute that would warrant jurisdictional discovery.  *See Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014) (noting there is "no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery").  Defendant is not incorporated in Florida and its principle place of business is in Tennessee.  Colombo Decl. ¶ 3-4.  Moreover, Plaintiff has proffered no evidence to suggest "exceptional circumstances" may exist here to establish general jurisdiction under *Daimler*.  *See Daimler*, 571 U.S. at 139.  Accordingly, Plaintiff's alternative request for jurisdictional discovery is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant Asurion, LLC's Dispositive Motion to Dismiss or Transfer for Lack of Personal Jurisdiction [ECF No. 16] is **GRANTED** and this case is **DISMISSED**.  The Clerk of the Court is instructed to **CLOSE** the case and any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 28th day of June, 2019.

	**RODOLFO RUIZ**
	**UNITED STATES DISTRICT JUDGE**